224 So.2d 161 (1969)
Olga KENNY, wife of/and Paul MALONEY, Jr.
v.
OAK BUILDERS, INC., et al.
No. 3352.
Court of Appeal of Louisiana, Fourth Circuit.
June 2, 1969.
Rehearings Denied July 7, 1969.
*162 Casey, Babin & Casey, A. F. Babin, Jr., New Orleans, for plaintiffs-appellees.
Deutsch, Kerrigan & Stiles, A. Morgan Brian, Jr., New Orleans, for Mrs. Betty Moss and Continental Casualty Co., defendants-appellees.
Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, Julian H. Good, New Orleans, for Bernard Wholesale Distributing Co.
*163 George A. Frilot, III, New Orleans, for Milford A. Friedrich, d/b/a Friedrich Refrigeration.
Normann & Normann, David R. Normann, New Orleans, for DeSota-Rabalais, Inc., defendant-appellee.
Huddleston & Davis, James R. Sutterfield, New Orleans, for St. Bernard Roofing & Sheet Metal Co., third-party defendant-appellant.
N. J. Gagliano, Metairie, for Higgins & Ostarly, Inc., third-party defendant-appellee.
Edmond R. Eberle, New Orleans, for Gus Duncan, third-party defendant-appellee.
A.D. Freeman, Jr., New Orleans, for Oak Builders, Inc., defendant-appellant.
Before REGAN, BARNETTE and GARDINER, JJ.
REGAN, Judge.
The plaintiffs, Mr. and Mrs. Paul Maloney, Jr., filed this suit against the defendants, Oak Builders, Inc., the contractor, Fidelity and Deposit Company of Maryland, its surety, Betty A. L. Moss, the architect, and Continental Casualty Company, her liability insurer, endeavoring to recover the sum of $38,163.27, representing damages which they assert were incurred as the result of the defendants' breach of contract in connection with the construction of their home. More particularly, the suit is predicated upon the contractor's failure to perform its obligations in a workmanlike manner, and the failure of the architect to properly supervise the work and ascertain that it was performed in conformity with the plans and specifications.
The defendants answered and denied the accusations of wrongdoing asserted by the plaintiffs.[1] The defendant, Oak Builders, Inc., then filed a third party demand against several of its subcontractors, Noel St. Cyr, Higgins & Ostarly Plumbing and Heating Company, Inc., Marvin N. Garrett, d/b/a Garrett Tile Company, Milford A. Friedrich, Jr., d/b/a Friedrich Refrigeration Service, St. Bernard Roofing & Sheet Metal Company, J. C. Baumgartner, d/b/a Central Vac of New Orleans, Bernard Wholesale Distributing Company, Chris Peters, DeSota-Rabalais, and Gus Duncan, endeavoring to obtain a judgment against these subcontractors for their portion of the alleged defective work performed by them on the plaintiffs' home. An answer was filed to this third party petition by Higgins & Ostarly, Marvin N. Garrett, J. C. Baumgartner, Bernard Wholesale Distributing Company, Milford A. Friedrich, Jr., DeSota-Rabalais, Gus Duncan, and St. Bernard Roofing and Sheet Metal Company, in which they all denied any improper practices and insisted that they performed their work in accordance with the plans and specifications.
The third party defendant, St. Bernard Roofing and Sheet Metal Company, filed a reconventional demand against Oak Builders, Inc., through which it endeavored to recover the sum of $610.00 which it asserts is the unpaid balance due on the subcontract between it and Oak Builders, Inc. St. Bernard Roofing also filed its own third party complaint against Oak Builders, Inc., and Betty A. L. Moss in order to recover the sum of $629.00 for extra labor and materials used above and beyond that specified in the main contract, which extra work was performed at the instigation of Oak and Mrs. Moss.
*164 Following an extended trial on the merits, judgment was rendered as follows:
1. In favor of the plaintiffs, Mr. and Mrs. Paul Maloney, Jr., and against Oak Builders, Inc., and Fidelity and Deposit Company of Maryland solidarily in the amount of $8,248.47, together with a like judgment in favor of Fidelity and Deposit Company against Oak Builders, Inc., John S. Morvant, Jr., and Beverly Morvant solidarily in conformity with their indemnity agreement.
2. In favor of the defendants, Betty A. L. Moss and Continental Casualty Company and against the plaintiffs, Mr. and Mrs. Paul Maloney, Jr., dismissing their suit against them.
3. In favor of Oak Builders, Inc., and against Chris Peters in the amount of $332.00.
4. In favor of Oak against DeSota-Rabalais in the amount of $140.00.
5. In favor of Oak against Bernard Wholesale Distributing Company, Inc., in the amount of $352.60.
6. In favor of Oak Builders, Inc., against Higgins & Ostarly in the amount of $63.95.
7. In favor of Oak Builders, Inc., against Milford A. Friedrich, Jr., in the amount of $1,087.42.
8. In favor of Oak Builders, Inc., against DeSota-Rabalais in an additional amount of $25.00.
9. In favor of Oak Builders, Inc., against St. Bernard Roofing and Sheet Metal Company in the amount of $4,632.60.
10. In favor of Oak Builders, Inc., against Higgins & Ostarly for the additional sum of $300.00.
11. In favor of J. C. Baumgartner and against Oak Builders, Inc., dismissing Oak's third party petition.
12. In favor of Oak Builders, Inc., against Marvin N. Garrett for $135.97.
13. In favor of Noel St. Cyr and against Oak Builders, Inc., dismissing its third party petition.
14. In favor of Gus Duncan, dismissing Oak Builders' third party petition.
15. Dismissing St. Bernard Roofing and Sheet Metal Works' reconventional demand and third party petition against Oak Builders, Inc., Betty A. L. Moss, and Continental Casualty Company.
16. In favor of Arthur F. Babin, Jr., attorney for the plaintiffs, against the defendants, Oak Builders, Inc., and Fidelity and Deposit Company of Maryland, solidarily in the amount of $4,608.20 representing attorney's fees, together with a like judgment in favor of Fidelity and Deposit Company against Oak Builders, Inc., and Mr. and Mrs. Morvant under their indemnity agreement.
In addition to the foregoing, the lower court awarded numerous expert fees against various parties involved in this litigation.
From this judgment, appeals were prosecuted by Oak Builders, Inc., Fidelity and Deposit Company of Maryland, Milford A. Friedrich, Jr., and St. Bernard Roofing and Sheet Metal Company. In addition thereto, answers to the appeal were filed by DeSota-Rabalais, Mr. and Mrs. Paul J. Maloney, Jr., the plaintiffs herein, Milford A. Friedrich, and Bernard Wholesale Distributing Company.[2]
The record discloses that Paul Maloney, Jr., the president of the Citizen's Homestead Association, together with Mrs. Maloney, entered into an agreement with one of the defendants, Mrs. Betty A. L. Moss, an architect, on March 27, 1963, to draw plans for the erection of a home for them in the Lakeshore area of the City of New Orleans. The agreement was confected through the medium of the standard form *165 used by the American Institute of Architects. On October 21, 1963, Oak Builders, Inc., the principal defendant herein, entered into a building contract with the plaintiffs and with the Citizen's Homestead Association through the use of a building contract form of the Citizen's Homestead, wherein Oak Builders, Inc., agreed to construct the plaintiffs' house for the sum of $92,164.00. The plans and specifications drawn by Mrs. Moss were paraphed by the homestead's notary for identification with the building contract, but the homestead's own building expert, John J. Cruthirds, was named in the agreement as the expert to direct the work and to whose satisfaction it was to be performed.
Thereafter, construction was begun and the residence was completed on or about September 1, 1964. On that date, the plaintiff was dissatisfied with certain imperfections in the house, and he prepared, with the assistance of his wife, a list of these defects, referred to herein as a "punch list". The plaintiff also had in his possession the sum of approximately $30,000.00, which was payable upon final acceptance of the contractor's work.
In order to obtain as much of the $30,000.00 final payment as possible, Oak Builders, Inc., entered into an agreement with the plaintiff by virtue of which it paid him the sum of $3,000.00 for unacceptable items contained in the house, together with $1,720.00 as liquidated damages for delay in conformity with the demurrage clause set forth in the building contract. Oak Builders, Inc., also agreed to complete or redo the items delineated in the punch list, which was made part of the agreement. Thereafter, an acceptance was filed in the appropriate office, and the plaintiffs took possession of the residence. All payments specified in the compromise agreement of October 1, 1964, were paid. On May 25, 1965, the plaintiff, Maloney, through his attorney, made a demand upon the architect and contractor to remedy or repair certain architectural and construction errors, omissions, and defects which allegedly caused the plaintiffs to pay large sums of rent, substantial interest, and to incur other expenses. When the architect and the contractor did not capitulate to these demands of the plaintiffs, this suit ensued.
This case poses for our consideration innumerable factual and legal issues, which have been resolved by virtue of a thorough analysis of seven voluminous volumes of testimony which is designated as the record herein. In any event, we have endeavored to ignore the trivial and to decide the substantial issues tediously culled from a disjointed and a relatively incoherent transcript.
The law encompassing the execution of building contracts emanates from the rationale contained in Article 2769 of the Louisiana Civil Code which reads:
"If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract."
The jurisprudence interpretive thereof has pointed out that the law governing construction contracts is different from that which is generally applicable to commutative contracts where there can be no recovery in the absence of full performance. With respect to construction contracts, a substantial compliance is sufficient to justify recovery of the contract price by the plaintiffs. The owner's remedy in the presence of substantial compliance or performance is to assert and then prove the nature and extent of the unfinished or defective work so as to reduce the sum due to the contractor by the amount of the cost involved in completing the contract.[3] Therefore, the owner has a dual burden of proof. He must prove (a) the existence of the defects and omissions on the part of the contractor *166 and (b) the cost of repairing or finishing the defective work.[4]
It is also well settled that even if the owner proves the existence of the defects or omissions and the cost of repairing them, he is nevertheless barred from recovering the cost thereof if he accepted the work despite the patent defects or imperfections discoverable upon reasonable inspection. Acceptance, however, does not bar the owner from recovering for defects not readily discoverable by ordinary inspection, or for defects which manifest themselves subsequent to the acceptance, or for defects which are explicitly excluded from the terms of the acceptance.[5]
The lower court found, as a matter of fact, that the defendant contractor substantially complied with his obligations under the building contract. Our analysis of this voluminous record convinces us that this finding of the lower court is correct. Consequently, the scope of our review hereof will be limited to a determination of the defects, if any, for which the plaintiffs are entitled to recover.
The lower court rendered judgment awarding the plaintiffs damages for numerous items which the principal plaintiff admitted he knew about before the date on which he signed the acceptance. Therefore, unless those items were delineated in the punch list, the plaintiff would not be entitled to recover therefor. To reiterate, after an evaluation of the record, the lower court's judgment and reasons therefor, together with the punch list attached to the compromise agreement as an exhibit, we are convinced that the lower court was correct in awarding the sum of $3,962.40, as compensation for numerous defects[6] for which the plaintiffs seek recovery.
Several items for which the lower court made an award to the plaintiffs require more detailed discussion. It awarded the sum of $135.97 to reimburse the plaintiffs for the cost of having slate floors in the living room and dining room buffed, polished, and cleaned, as well as having certain high spots ground therefrom. However, the punch list merely required that the contractor clean, seal, wax, and buff all wood, slate, and vinyl floors. Nowhere in the punch list is the grinding or smoothing of the slate floors mentioned, and it is quite obvious that the plaintiff knew of the uneven nature of natural slate before the compromise and acceptance were signed. Consequently, while the plaintiff is entitled to be reimbursed for the cleaning, waxing, and buffing of the floors, he is not entitled to be reimbursed for any grinding thereof. Therefore, the lower *167 court should not have awarded more than $40.00 as reimbursement for this particular item.
With respect to the roof leakage, it is conceded by the litigants herein that this was a latent defect which was not discoverable until after the date of the compromise agreement. Following several inspections, the lower court concluded that the roof contained many cracked slates, that this resulted from improper nailing techniques, and that the sum of $265.00 would have to be expended to repair this defect. We detect no error in this award.
Item 50 of the punch list calls for the repair of a leak between the roof gutter and fascia. The evidence is clear that this leak has never been adjusted and that it has already been the cause of some damage. The lower court concluded that the sum of $1,275.00 would have to be expended to repair this defect. It is evident that the defendant contractor is under an obligation to complete the repairs specified in the punch list, and since it has failed to do so, the lower court's award must stand.
Finally, the plans and specifications call for a gravel guard and gutter on the roof of the house to be designed as one piece. Instead, it was constructed in two pieces, with a seam along the back side of the gutter next to the fascia board. There was much laborious and conflicting evidence adduced herein with respect to the sufficiency of this construction and the probability of water backing up from the gutter through this seam into the fascia board and soffit. The lower court concluded that the leak into the soffit was caused either by the installation of the two-piece system or by the fact that the installation thereof was improperly performed. After a review of an incredible amount of evidence adduced with respect to this particular aspect of the case, we are unable to detect that the lower court committed error in its ruling. Consequently, we conclude that its award of $2,609.60 for replacement of the gravel guard and gutter system is correct.
The plaintiffs insist that the lower court failed to make awards for numerous items contained in the punch list despite the defendant contractor's failure to repair them. Our evaluation of the record discloses that a serious doubt exists as to whether these defects were of such importance as to justify an award for them against the defendants. The trial judge inspected the premises on many occasions in order to reconcile conflicts in the evidence offered to him, as is his right,[7] and obviously concluded that these other punch list items were of no judicial merit. Moreover, it is very significant to point out that the homestead building inspector, who was employed by the homestead of which the plaintiff was the president, failed to appear and testify as a witness in order to establish the existence of punch list defects or any other defects complained of by the plaintiffs. It was proved that the homestead's building inspector visited the construction site almost daily, so that he was probably the best informed source relative to the existence of any defects. It is jurisprudentially well settled that the unexplained failure of a litigant to request the appearance of a witness who possess knowledge peculiar to and essential to the case, who is under the plaintiff's control and available to him, raises the presumption that this witness' testimony would be detrimental to the litigant's case.[8]
The next question posed for our consideration is the liability of the architect, Mrs. Moss, and her insurer under two claims asserted against them herein. First, the plaintiffs sued the architect and her insurer alleging professional malpractice in the design and supervision of their home. Second, it will be remembered that St. Bernard *168 Roofing filed a third party petition against the architect and the contractor for $629.00 representing the balance due for extras which it claims to have performed in addition to the work required by its subcontract.
Discussing the latter claim first, the record discloses that the plaintiff refused to accept a certain portion of the construction, but Oak and St. Bernard Roofing denied that the plaintiffs' complaint was valid. To circumvent the development of an impossible situation and to permit progress on the job to be maintained, the architect joined the two contractors in performing at their own cost a compromise remedial procedure acceptable to the plaintiff. St. Bernard Roofing agreed to perform the extra work without charging for overhead and profit and Oak and Mrs. Moss agreed to pay the cost of the extra labor and materials used. The invoice from St. Bernard was in the approximate amount of $1,129.00. Mrs. Moss paid St. Bernard Roofing the sum of $500.00, and a receipt was given to her whereupon "payment in full" was inscribed across the face of the invoice. The lower court offered no reasons for dismissing St. Bernard Roofing's third party petition against Mrs. Moss, but it is evident that the judge thereof reasoned that its claim against her was extinguished by the release. St. Bernard Roofing does not seriously contest this aspect of the case, and we are convinced that the lower court's judgment, in this respect, should be affirmed.
The more serious question posed for our consideration with respect to the liability of Mrs. Moss revolves around the suit by the plaintiffs for professional malpractice. The lower court reasoned that while architects inevitably make some mistakes in the course of a construction job, nevertheless the architect is not a guarantor of the work. Consequently, he concluded that she was not guilty of any malpractice and dismissed the suit against her and her insurer.
The plaintiffs complaint against the defendant architect is two-fold. First, they complain that the design, plans and specifications prepared by her are faulty and deficient. Second, they complain that her supervision of the contractor's work was improperly performed.
Architects and engineers are held liable for damages incurred by the owner by whom they are employed when their plans and specifications are faulty and defective as a result of their neglect to exercise care and skill. However, in the absence of an express contractual provision to the contrary, an architect's obligation does not imply or guarantee a perfect plan or a satisfactory result, and there is no assurance that miscalculations will not occur. Liability is considered to rest only on unskillfulness or negligence and not upon mere errors of judgment.[9] Moreover, the ordinary care and reasonable skill by virtue of which engineers' or architects' preparations of plans and specifications is to be evaluated in determining whether they are guilty of negligence, must be that same care and skill required by others engaged in the same profession in the same locality.[10] We also hasten to point out that by virtue of this contract the defendant architect was required to render "general administration of the contract documents", and there was no explicit contractual duty for "supervision" or "control" of the contractor's work.[11]
Three architects testified at the trial of this matter. Mrs. Moss' expert architect fully substantiated her position and emphasized *169 that she was not at fault nor was she guilty of any professional malpractice. The plaintiffs' expert was somewhat critical of Mrs. Moss' work, but his testimony clearly reveals that he regarded as "errors" any deviations from his own personal standards, and he did not testify as to her negligence or malpractice vel non predicated upon community wide or local architectural standards. Two other competent witnesses also testified; both were professional engineers. One was somewhat critical of certain aspects of the house's foundations, but he offered no testimony with respect to architectural negligence or malpractice. The other architect was quite complimentary of Mrs. Moss' work, and concluded that there was no negligence or malpractice involved in her plans and specifications with respect to the foundations, site slabs, and other aspects thereof.
A careful analysis of the testimony of all of these expert witnesses who appeared herein discloses that the plaintiffs failed to establish the local prevailing standards for architectural competence, and in view of this omission it was quite impossible for the lower court, as it is for us, to judge the performance of Mrs. Moss. In order to disclose any negligence involving malpractice, it is necessary to establish the breach of a duty. Since the duty was not established, it logically follows that there can be no conclusion as to a breach thereof. Consequently, we are in agreement with the lower court in reasoning that there was no proof of any professional malpractice or fault on the part of Mrs. Moss.
The next issue posed for our consideration is the validity of the lower court's award to the plaintiffs' attorney of $4,608.20, representing 5% of $92,164.00, the original contract price, as specified in the provisions of the performance bond called for and confected simultaneously with the Citizens Homestead building contract. The bond recites that it is a bond provided by Act 298 of 1926, now reinacted as R.S. 9:4802. The printed portions of this statute reads:
"* * * The owner of such work shall require of such undertaker, contractor, master-mechanic, or engineer, a bond with surety as follows: For all contracts not exceeding ten thousand dollars the amount of the bond shall be the amount of the contract. If the contract is over ten thousand dollars, but does not exceed one hundred thousand dollars, the bond shall be not less than fifty per cent of the amount of the contract but not less than ten thousand dollars in any event, if the contract is over one hundred thousand dollars but does not exceed one million dollars, the bond shall be not less than thirty-three and one-third per cent of the amount of the contract; and if the contract exceeds one million dollars, the bond shall be not less than twenty-five per cent of the amount of the contract. The bond shall be attached to and recorded with the contract in the office of the clerk of court or recorder of mortgages, as above set forth, and the condition of the bond shall be the true and faithful performance of the contract and the payment of all subcontractors, journeymen, cartmen, workmen, laborers, mechanics, and furnishers of material, machinery or fixtures jointly as their interest may arise."
The pertinent provision of the bond furnished by the surety reads as follows:
"And it is agreed and understood that said surety, in addition to the amount of the foregoing bond, shall be liable for all costs, charges, expenses and attorney's fees, incurred in any matter growing out of or arising under this contract or incurred in any concursus or other legal proceedings made necessary by the failure of the Contractor to faithfully comply with the foregoing contract, said attorney's fees, in the event of suit to be fixed at five percent on the amount of the foregoing bond."
The defendant, Oak Builders, Inc., argues that since the bond statute did not contain a provision requiring attorney's fees, such portion of the bond should be disregarded *170 under the authority of the rationale emanating from Minden Presbyterian Church v. Lambert[12] and Electrical Supply Co. v. Eugene Freeman.[13] The ratiocination employed in these cases is that where a bond contains language which is not required in the bond statute or where the bond omits provisions required by the statute, the instrument will be judicially reformed to comply with the provisions thereof. Thus, the defendant insists that the provision for attorney's fees should be deleted from the bond since no such requirement exists in the appropriate statute. In addition, the defendant argues that the strict adherence to the attorney's fee portion of the bond in view of the relatively small amount of the plaintiffs' recovery, works an unconscionable hardship on the defendants.
Our review of the existing law reveals that the Louisiana Civil Code contains two separate and distinct provisions with respect to damages fixed in advance of a breach of contract. Articles 2117 through 2129 provide for contracts which contain a penal clause secondary thereto. Article 2120 renders the purpose of these articles emphatically clear by providing that the penalty is stipulated "merely to enforce the performance of the principle obligation * * *." On the other hand, Article 1934 (5) of the Civil Code provides for liquidated damages, that is damages established in advance of any breach of the obligation and which provide for the exact amount of recovery in the event that such a breach should occur. This article does not impose damages by way of penalty, since by definition it stipulates in advance and by agreement what amount of damages should be incurred as the result of the breach. However, the second sentence of the article reads:
"* * * But when the contract is executed in part, the damages agreed on by the parties may be reduced to the loss really suffered and the gain of which the party has been deprived, unless there has been an express agreement that the sum fixed by the contract shall be paid, even on a partial breach of the agreement."
An analysis of this portion of Article 1934(5) reveals that when the contract is partially executed, the damages agreed upon by the parties may be judicially reduced to the loss actually suffered unless the parties have agreed that the sum fixed by the contract shall be paid even in the event of a partial breach thereof. Upon analyzing the portion of the bond which calls for attorney's fees, the obvious import of the language thereof is that the surety shall be liable for all costs and attorney's fees in any matter growing out of or arising under the contract resulting from the failure of the contractor to faithfully comply with its provisions. Since this is a construction contract, and since the rule has been that partial performance allows partial recovery in such a contract even prior to drafting of the contractual provision now before us, we are led to the inevitable conclusion that it was the intention of the parties that attorney's fees as specified in this portion of the contract, were to be paid irrespective of the fact that a partial breach thereof had occurred. Moreover, it is our conclusion that the clause in the contract calling for attorney's fees is supplemental to the bond and is authorized by Article 1934(5). If we are to read this portion of the contract out of the bond, we would be interfering with the freedom of the parties to contract. The statutory requirements of the bond are met, and the attorney's fees provision is merely a separate and distinct obligation incurred in supplement thereto. The cases cited by the defendant are inapposite because the provisions of the bonds judicially reformed therein were in themselves deficient. Consequently we are convinced that the lower court was correct in awarding 5% of the amount of the bond to the plaintiffs' attorney for his services.
The final vexatious question posed for our consideration is whether the defendant, *171 as third party plaintiff, is entitled to a judgment over against the third party defendant subcontractors for their proportionate share of the attorney's fee awarded to the plaintiff by virtue of the defective performance of the contract. The subcontractors assume the position that they were not parties to the original contract between the plaintiffs and Oak Builders, Inc., and that they are not consequently bound by the attorney's fee provisions thereof. In short, they urge the defense of lack of privity of contract, relying on the fact that their only obligation was to Oak Builders, Inc., under their subcontracts.
On the other hand, Oak argues that under the rationale emanating from the case of Delta Paving Company v. Woolridge [14] it is only a party who is technically liable for the attorney's fees and is entitled to a judgment over against the subcontractors, whose breach actually caused the attorney's fee clause to be invoked. An analysis of the Delta Paving case reveals that the plaintiff was a subcontractor who sued the general contractor and the owner for the balance due under the subcontract. We concluded therein that the plaintiff paving contractor had substantially performed its contract before its termination by the owner. In consequence, we awarded the plaintiff's attorney fees under the contract and granted the general contractors third party petition over against the owner for the reason that it was the owner's interference in the performance of the contract which actually rendered the defendant general contractor liable to the plaintiff for attorney's fees. While this case does not pose the exact factual situation presented in the Delta Paving Company case, the facts are sufficiently analogous to justify our pursuing the rationale thereof. In this case, the subcontractors' breach of their agreements to the general contractor was the true cause of the general contractor's having to pay attorney's fees to the plaintiffs. In this sense, the general contractor, having a right to rely on the performance of its subcontractors, was only technically liable to the plaintiffs. The true cause of the failure of performance was the breach of the obligations of the subcontractors. Consequently, the amount of the attorney's fees, as in the Delta Paving case, is an additional item of damage incurred by it as a result of the subcontractors' breach, and a judgment over against the subcontractor should be awarded to the same extent as the damages for noncompliance with the contract were awarded by virtue of the defendant's third party petition.
For the foregoing reasons, the judgment of the lower court is amended in the following respects:
1. The judgment in favor of the plaintiffs, Mr. and Mrs. Paul Maloney, Jr., and against Oak Builders, Inc., and Fidelity and Deposit Company of Maryland solidarily in the amount of $8,248.47 is hereby reduced to the sum of $8,152.50, together with legal interest thereon from date of judicial demand until paid, and judgment in a like amount is hereby rendered in favor of Fidelity and Deposit Company of Maryland against Oak Builders, Inc., John S. Morvant, Jr., and Beverly Morvant solidarily.
2. Judgment is hereby rendered in favor of Oak Builders, Inc., and against the third party defendants, Chris Peters, DeSota-Rabalais, Bernard Wholesale Distributing Company, Inc., Higgins & Ostarly, Milford A. Friedrich, Jr., St. Bernard Roofing and Sheet Metal Company, and Marvin N. Garrett solidarily in the full sum of $4,608.20 as indemnity for the sum which Oak Builders, Inc., was condemned to pay the plaintiff's attorney.
3. In all other respects, the judgment of the lower court is affirmed. All costs of this proceeding are hereby taxed against all defendants and third party defendants cast in the lower court, with the exception of Mrs. Moss and her insurer.
Amended and affirmed.
NOTES
[1] Fidelity and Deposit Company of Maryland filed a third party demand against Oak Builders, Inc., John S. Morvant, Jr., and Beverly Morvant endeavoring to recover under an indemnity agreement by which the third party defendant agreed to hold the surety harmless in the event that it should be cast in judgment as the result of the failure of Oak Builders, Inc., to perform its contract. By written stipulation filed in the record of this proceeding, it was agreed that in the event judgment should be entered against Fidelity and Deposit Company of Maryland, as surety for Oak Builders, Inc., a like judgment should be entered against the third party defendants under their indemnity agreement.
[2] The Bernard Wholesale Distributing Company's answer was filed too late under the rules of this court, and, therefore, we cannot consider it.
[3] See Loeb v. Neilson, La.App., 128 So.2d 447 (1961).
[4] Loeb v. Neilson, La.App., 128 So.2d 447 (1961); Ebert v. Chambers, La.App., 87 So.2d 613 (1956); Norman v. Brown, La.App., 83 So.2d 488 (1955); Spicuzza v. Ranzino, La.App., 73 So.2d 208 (1954).
[5] See Justiss-Mears Oil Company, Inc. v. C. B. Pennington, La.App., 132 So.2d 700 (1961) and Gulotta v. Swinney, La.App., 143 So.2d 775 (1962).
[6] The following items were correctly awarded by the lower court: shoe moulding and other necessary painting throughout the building (known but listed in punch list), $332.00; removal of trim work, patching and regrouting cracks, $60.00; new toilet seat, $25.00; adjusting folding doors and installing new hardware (known but in punch list), $84.00; repairs to cabinets, $352.60; tops and bottoms of doors not painted (allowances made in first item for painting); cost of correction of leaks in sliding glass doors, $40.00; repair of sliding screen doors, $168.00; adjustments to dining room sliding door, $80.00; repair of airconditioning unit, $236.92; future corrections to airconditioning unit, $850.50; correction of stripping which is warped and pulling loose, $25.00; installation of screens, $28.00; electrical bill due by contractor to New Orleans Public Service, Inc., $28.93; cost of repairing two defective and leaking skylights, $50.00; cost of correction of cracks in the foundation at four corners of building, $500.00; adjustment of trim, $12.00; beautification with line of screws, $50.00; hole in wood after egg crate removed, $8.00; stuck toilet valves, $38.95; additional downspouts and clean outs, $483.00; removal, resetting, and caulking of slit windows, $90.00; replacing broken slit windows (not in petition or punch list), $120.00; additional downspouts, $300.00.
[7] American Tile & Terrazzo Co. v. Keiler, La.App., 200 So.2d 350 (1967).
[8] See, for example, Veillon v. Sylvester, La.App., 174 So.2d 189 (1965) and Aguillard v. Home Insurance Company, La. App., 203 So.2d 746 (1967).
[9] Pittman Construction Company v. City of New Orleans, La.App., 178 So.2d 312 (1965).
[10] See Pittman Construction Company v. City of New Orleans, La.App., 178 So. 2d 312 (1965).
[11] See Day v. National U. S. Radiator Corporation, 241 La. 288, 128 So.2d 660 (1961), where the Supreme Court held in an analogous situation that architects have no duty to supervise the contractor's procedures and techniques in performing the work for which they contract.
[12] 167 La. 712, 120 So.2d 61 (1929).
[13] 178 La. 741, 152 So. 510 (1934).
[14] La.App., 209 So.2d 581 (1968).