296 So.2d 393 (1974)
Durwood CLARK, Plaintiff-Appellee,
v.
Dr. Betty WHITENER, Defendant-Appellant.
No. 12324.
Court of Appeal of Louisiana, Second Circuit.
May 28, 1974.
Rehearing Denied July 1, 1974.
Writ Refused September 13, 1974.
*394 Bruscato & Loomis, by Albert E. Loomis, III, Monroe, for appellant.
Massey & Robinson, by John S. C. Massey, West Monroe, for appellee.
Before AYRES, HALL and WILLIAMS, JJ.
WILLIAMS, Judge.
This appeal by defendant, Dr. Betty Whitener, a single woman, is from a judgment decreeing she owes a balance of $15,361.52 on a building contract. Durwood Clark, a general contractor, entered into an agreement with Dr. Whitener for construction of a residence and other improvements. Actually there were three contracts: (1) September 29, 1971, the basic contract for the residence; (2) September 29, 1971, a supplement to the basic contract to include barn alterations, pressure tank and pump; and (3) January 10, 1972, a contract for the construction of a swimming pool and sauna unit.
The total cost of these constructions was agreed to be $148,534.00. All plans, specifications and contracts were prepared by Paul F. Stewart, Dr. Whitener's architect. The contractor furnished bond and the contracts were timely recorded in the mortgage records of Morehouse Parish. Change orders, making certain additions and deletions, resulted in reducing final costs to $142,585.74. Of this amount, Dr. Whitener paid $128,327.74.
Durwood Clark then instituted suit claiming a balance due of $15,980.30 plus $250 as costs of recording a labor and material lien upon Dr. Whitener's new residence, plus the additional sum of $7,971.18 as damages due for delays caused by Dr. Whitener to Clark. After filing numerous motions and exceptions, defendant filed an answer which was in the form of a general denial, setting forth no affirmative defenses or reconventional demands by Dr. Whitener. Following a four day trial, the lower court decreed Dr. Whitener owed $15,361.52 to Clark, the labor and material lien was recognized and all costs cast upon Dr. Whitener. The court in its judgment reserved any rights Dr. Whitener may have under the warranty and for damages against Clark. Dr. Whitener perfected this suspensive appeal.
Clark answered the appeal asking for an award of additional damages and seeks to have the judgment amended to eliminate the reservation of Dr. Whitener's rights to assert any claims she may have in damages resulting from unworkmanlike performance or inadequate or improper specifications or for costs of repairing or completing any unfinished or inadequate work.
This was a protracted trial and six volumes of record readily evidence numerous factual and legal issues presented for consideration.
After the contracts were signed the contractor began construction of the residence. During early stages, Dr. Whitener was present, but from June 1, 1972 to about the 1st of November, 1972, she was residing in Hawaii. During her absence she relied heavily on the architect and her sister. It was during this absence the architect forwarded her the certificate of acceptance of the work done by Clark as substantially complete. This certificate, dated October *395 6, 1972, was signed by Dr. Whitener and the architect, and delivered to the contractor.
Upon Dr. Whitener's return she complained to the architect of many apparent items of noncompliance by the contractor. The architect prepared two lists of the defects, referred to as "punch lists", the first containing 68 items, dated January 3, 1973, and a second containing 23 items dated January 10, 1973. On February 12, 1973 the architect reviewed these lists and found at least 32 items on list 1 and 7 items on list 2 as not having been corrected.
The question for resolution is whether the contractor substantially completed his contractual responsibility. If the contractor has done this, the rights of the parties are governed by the Louisiana Civil Code provisions and jurisprudence of our state.
In Maloney v. Oak Builders, Inc., 224 So.2d 161 (La.App., 4th Cir. 1969) the court stated:
"The law encompassing the execution of building contracts emanates from the rationale contained in Article 2769 of the Louisiana Civil Code which reads:
"`If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract.'
"The jurisprudence interpretative thereof has pointed out that the law governing construction contracts is different from that which is generally applicable to commutative contracts where there can be no recovery in the absence of full performance. With respect to construction contracts, a substantial compliance is sufficient to justify recovery of the contract price by the plaintiffs. The owner's remedy in the presence of substantial compliance or performance is to assert and then prove the nature and extent of the unfinished or defective work so as to reduce the sum due to the contractor by the amount of the cost involved in completing the contract.. . ." [224 So.2d 161, 165]
The trial judge has in written opinion determined from this extensive record the contractor substantially complied with his contracts. The opinion concisely and correctly states reasons therefor, and with this conclusion we agree, and quote therefrom:

"SUBSTANTIAL COMPLIANCE
"Plaintiff first contends that since defendant executed and filed an acceptance of his work, she cannot now be heard to contest his substantial compliance. However, the evidence clearly shows that at the time of her execution of the formal acceptance, defendant was most dissatisfied with many aspects of the construction. She communicated this attitude to the architect and delayed signing the acceptance. Ultimately, and primarily for the purpose of starting the running of the statutory lien period to facilitate financing, she executed the acceptance upon the architect's assurance that the matters complained of would be completed or corrected. Moreover, as of January 3, 1973, the architect prepared a `punch list' of incomplete or unsatisfactory work containing 65 separate items; and on January 10 another punch list added 23 more items.
"The court is completely convinced that there are many imperfections in the construction, as well as some omissions and that there are some potentially serious defects. In such cases, the question of whether the shortcomings are sufficient to bar recovery by the contractor is one of fact, depending upon the circumstances. Plaintiff, of course, contends that in comparison to the whole project, these shortcomings are insubstantial; but he also argues that many of them, if present, relate to the adequacy of plans and specifications for which he is not responsible. Defendant, on the other hand, takes the position *396 that what might be considered minor defects in a modest home are simply not acceptable in the costly, luxury dwelling for which she contracted. Further, she argues that plaintiff made no serious effort to correct many of the items on the punch lists, that the house as left by him was not suitable for residence and that she was compelled to employ others to repair and complete the job.
"The evidence persuades the court that the air conditioning in the `cathedral room' is probably somewhat inadequate; that the heating unit under the tile flooring does not fully warm the tile; that the swimming pool loses water; that some of the windows leak; that the plumbing subcontractor omitted a drain and field lines; and that there are relatively minor but noticeable shortcomings, such as cracks between doors, visible joints in sheetrock, rough edges, painting foibles, loose hinges, and other similar problems at various places throughout the house. Many of these require only what may be called `touch up' or minor craftmanship; but others may be more serious.
"The court is also convinced that the expenditure of money is going to be necessary to correct many of these problems; and it is conceivable that at least the swimming pool and heating unit may turn out to be major difficulties requiring substantial expense. However, the evidence is incomplete and insufficient to permit the court to draw firm conclusions. Moreover, with respect to some of these deficiencies, the evidence clearly shows that they were supplied and installed in accordance with the plans and specifications; so that even if they are major problems, the plaintiff may not be held responsible. Further, there is some evidence that the steadily deteriorating relations between the parties may ultimately have contributed to the final disputes over the punch lists.
"In its present state, the evidence compels the court to find that plaintiff was in substantial compliance with his contracts and is entitled to recover the 10% retainage of $14,258.00. Such finding is, of course, without prejudice to defendant's rights of warranty under the contracts or her rights subsequently to proceed in proper action for any damages, costs of completion or cost of repairs which she may be able to prove."
Having agreed with the conclusions and reasons of the trial judge, we deem it unnecessary to make a detailed analysis of the evidence.
Clark alleged the delays caused by Dr. Whitener in delaying to make available certain cypress beams she was to supply in the construction of the residence caused him to suffer damages. The trial court found he failed to carry the burden of proof to show any such damages and denied this claim. We agree with this finding.
There were two items allowed by the trial court. Dr. Whitener was required under the contract to furnish certain appliances and select certain light fixtures and appurtenances. She did not make the selection and was absent from the United States for an extended stay in Hawaii. The extra costs for the electrical work thus caused was fixed at $251.60. The record supports this finding.
The second item allowed was damages caused by vandalism by persons unknown. A policy of insurance had been issued to Dr. Whitener and the loss adjusted at $851.92. This sum was paid to Dr. Whitener and she declined to pay it to the contractor because she claimed repairs of the damages were not fully and properly done. Although some damages were on the "punch list" the court allowed this recovery from Dr. Whitener inasmuch as the right was reserved to her to seek by separate action damages for such proven failures of the contractor. We are in accord with this finding. Therefore, the trial court's allowance of the two extras totaling $1,103.52 is correct.
*397 Clark answered this appeal urging the amendment of the judgment appealed by (1) awarding him certain special damages, and (2) the deletion of the reservations to Dr. Whitener the right to assert claims for defects caused by the negligence of the contractor or those for whom he is responsible.
For the reasons herein stated, we find no merit in this answer to the appeal, and the judgment of the trial court is affirmed.
Affirmed.