491 So.2d 166 (1986)
WEILL CONSTRUCTION COMPANY, INC., Plaintiff-Appellee,
v.
Maxie McDaniel THIBODEAUX d/b/a Skater's Playground, Inc., Mestayer, Darby & Partner, St. Paul Fire & Marine Insurance Company, Beaullieu & Associates, Inc. & American Motorists Insurance Company, Defendant-Appellant Defendants-Appellees.
No. 85-886.
Court of Appeal of Louisiana, Third Circuit.
June 25, 1986.
*167 Durio, McGoffin & Stagg, Steven G. Durio and William W. Stagg, Lafayette, for defendants-appellants.
Onebane & Associates, Douglas C. Longman, Jr., Lafayette, for defendants-appellees.
Domengeaux & Wright, Bob F. Wright and Charles Ponder, III, Lafayette, for plaintiff-appellee.
William Schuette, Jr., and John Dugas, of Franklin, Moore & Walsh, Baton Rouge, Pugh & Boudreaux, Charles J. Boudreaux, Sr., Lafayette, for defendants-appellees.
Before LABORDE and KING, JJ., and PAVY[*], J. Pro Tem.
*168 LABORDE, Judge.
This suit arises from the alleged faulty design, supervision, and construction of a skating facility in Lafayette, Louisiana. The contractor, Weill Construction Co., Inc. (Weill, Inc.) demanded payment of the retainage ($35,480.00) upon completion of the contract. The owners, Skater's Playground, Inc. and Maxie McDaniel Thibodeaux (Skater's), withheld this amount as compensation for the alleged defects found in the skating rink.

HISTORY OF THE SUIT
Weill, Inc. filed suit to enforce its laborer and materialman's lien; whereupon, Skater's brought reconventional demands against Weill, Inc. for faulty construction and against Mestayer, Darby & Partner (Mestayer) for faulty architectural design and inadequate supervision of construction. Weill, Inc. brought third party demands against Mestayer for indemnity, against Frank Beaullieu and Associates (mechanical engineers) for indemnity, and against St. Paul Fire and Marine Insurance Company, Inc. (St. Paul) for insurance proceeds. Mestayer third partied Frank Beaullieu and Associates' insurer, American Motorist Insurance Company (American), for indemnity.
St. Paul was granted a summary judgment and was subsequently dismissed from the suit. Trial was heard on the merits March 20, 21, 22, and 26, 1985. The trial court granted American's motion for directed verdict and dismissed the insurance company from the suit. Weill, Inc. was granted judgment on its principal demand against Skater's in the amount of $35,480.00. Skater's reconventional demand against Weill, Inc. was granted in the amount of $40,000.00. Weill, Inc. and Skater's third party and reconventional demands were respectively dismissed against Mestayer. The trial court recites in its reasons for judgment that it granted a directed verdict on behalf of Frank Beaullieu and Associates. The judgment itself does not reflect this action. The judgment is silent as to Frank Beaullieu and Associates; we must therefore conclude that the demands have been denied.
The summary judgment dismissing St. Paul from the suit has not been appealed and has since become final. Skater's has perfected its devolutive appeal against Weill, Inc. and Mestayer. Mestayer has answered the appeal moving that the trial court judgment be affirmed; alternatively, that should liability be found on the part of Mestayer on appeal, then that Mestayer is aggrieved by the granting of the directed verdict to its third party defendant, American. American has answered the appeal praying that the trial court judgment be affirmed and that American be awarded damages and attorney's fees for having to answer a frivolous appeal. Weill, Inc. has answered the appeal praying that the trial court judgment be affirmed; alternatively, that Weill, Inc. is aggrieved by the judgment in favor of Skater's and by the judgment dismissing Weill, Inc.'s third party demand against Mestayer. The dismissal of Frank Beaullieu and Associates from the suit has not been appealed; the judgment in this regard has become final.

FACTS
We glean the following from this suit's voluminous record: Ms. Maxie McDaniel Thibodeaux initially contracted with one Rayburn Ardoin, in February of 1978, to undertake the construction of a skating rink in Lafayette, Louisiana. For $400,000.00, Mr. Ardoin agreed to raise a metal building to enclose a 70' x 170' skating floor. It was understood that Mr. Ardoin had already completed the site work (dirt work) preparatory to construction. Prior to the actual erection of the building, Ms. Thibodeaux and Mr. Ardoin parted ways over some undisclosed dispute.
The architectural firm of Mestayer, Darby & Partner was contacted to assist Ms. Thibodeaux in putting her project back on track. After preliminary drawings were rendered, Ms. Thibodeaux studied and approved Mestayer's final construction drawings and specifications. She agreed to pay *169 Mestayer a fee of five (5%) percent of the construction cost.
Weill, Inc. contracted to build the rink for $360,000.00. Construction of the facility commenced in July, 1978, and was completed in February, 1979. In the final phase of construction, a drainage problem was detected by Diane Tanner, the daughter of Ms. Thibodeaux and manager of the rink. She brought the situation to the attention of Weill, Inc., and Mestayer. The owner was advised that the problem should be addressed and several options were related; nevertheless, no corrective measures were undertaken.
During heavy rains, water on the north side of the building would accumulate and rest against the foundation. The water would eventually wrap around the west end of the building then run along a ditch on the south side to a culvert. The necessity of maintaining a clean culvert was advocated by Mestayer. Ms. Tanner was also advised that additional culverts on the south side of the property and contouring or other ditch work on the site would be needed to alleviate the drainage demands. Although Skater's was holding $35,480.00 owed to Weill, Inc., and $2,500.00 owed to Mestayer, Skater's took no action to improve the drainage.
Seepage of water was initially observed in March of 1979 resulting from leakage in the northeast storeroom along the electrical conduits in the foundation. Mastic was applied along the northern foundation to stop this leakage. No other problems were noted until July 5, 1979 when water backed up through the drains in both bathrooms and flooded the hardwood skating floor. The flush valves in the toilets and urinals remained open for several hours after vandals opened fire hydrants in the neighborhood. The influx of water caused the water to back up through the floor drains. As a result of the flooding, the hardwood buckled so severely that a carpenter, Mr. Tom Heist, had to remove planks from around the perimeter of the floor. As a result of the "bathroom incident," the floor was damaged and the life expectancy of the floor had decreased. Prior to this, the skating floor had not been touched by water.
In May of 1980, heavy rains came and seeped through a cold joint on the north side of the foundation. This again caused the hardwood floor to buckle. Weill, Inc. created the cold joint by pouring the concrete foundation in two layers. The construction plans specify and require that a monolithic concrete foundation be poured.

ACTION OF THE TRIAL COURT
It is axiomatic that an appellate court should not disturb the factual conclusion of a trial court absent a manifest error which makes the factual determination clearly wrong. Thibodeaux v. Stagg, 460 So.2d 742, 744 (La.App. 3d Cir.1984). The trial court concluded that the floor had been damaged by the seepage of rainwater. The trial court found that
"These additional leaks were caused by the drainage on the property and because the slab was poured in such a manner as to result in a horizontal cold joint and honey combing ... [The manager] was advised in March of 1979 that there was a drainage problem that she should take action to correct ... [The owners] have done very little, if anything, to correct the drainage problem. The architect, Mr. Mestayer, discussed his obligation with Mrs. Thibodeaux and explained that they [the firm] would design the building but that they would not be responsible for supervision of construction."
In sum, the trial court found that damage to the building was caused by 1) faulty construction of the slab, resulting in a cold joint by Weill, Inc.; and 2) failure of the reconventional plaintiff, Skater's, to take action to correct the drainage problem after having discovered its existence.
SKATER'S ASSIGNMENTS OF ERROR
"1) Contractor's Recovery. The Lower Court's finding in favor of Weill on its contract and allowance of one hundred (100%) percent of the contract payments, in spite of a clear breach of *170 contract and resulting damage to the defendant and reconventional plaintiff.
2) Mitigation of Damages. The Lower Court's finding that the appellants, as owners of the building, had done little to correct drainage problems discovered at the site and its reduction of appellant's recovery for failure to mitigate damages.
3) Calculation of Damages. The Lower Court's failure to calculate damages in total based upon the evidence of record.
4) Architect's Supervisory Fault. The Lower Court's dismissal of the architects on the erroneous finding that they had no obligation to supervise the contract.
5) Architect's Design Fault. The Lower Court's dismissal of the architects despite evidence establishing their failure to properly investigate the site, anticipate a drainage problems [sic] which would be precipitated by the building on the site, and to organize a system for drainage of the north face of the building where these problems would occur."

CONTRACTOR'S RECOVERY
Appellant is dismayed that Weill, Inc., although found to have breached the construction contract by pouring a nonmonolithic slab, recovered one hundred (100%) percent of the contract price.
The doctrine of "substantial performance" holds that, notwithstanding defects, a contractor has the right to recover the balance due on his contract if he has substantially performed his obligations. Substantial performance means that despite deficiencies, a construction is fit for its intended purpose. Daspit Brothers Marine Divers, Inc. v. Lionel J. Favret Construction, 436 So.2d 1223, 1230 (La.App. 5th Cir.1983). When a contractor has substantially performed a building contract, he is entitled to recover the contract price and the owner is relegated to having the price reduced by the amount necessary to perfect or complete the work properly. Walter Lafargue Real Estate, Inc. v. Raines, 420 So.2d 1309, 1311 (La.App. 3d Cir.1982). The skating facility has been used consistently by appellant since February, 1979. The manager noted that the rink had been closed only briefly for repairs since its opening. This project was obviously substantially completed.
We find that Weill, Inc. failed to do the work it had contracted to do under La.CC. art. 2769:
"If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract."
This breach relates only to Weill, Inc.'s failure to pour a monolithic slab. Appellant is entitled to recover damages for the amount necessary to perfect or complete the work properly, for the necessary repair caused by the breach, and for the losses that ensued from the non-compliance of the contract. We find no manifest error in the trial court's decision to bifurcate the award ($35,480.00 to Weill, Inc.; $40,000.00 to Skater's). The result is a $4,520.00 net award to Skater's, a figure supported by the record for reasons which will be discussed under "MITIGATION AND CALCULATION OF DAMAGES," infra.

ARCHITECT'S SUPERVISORY FAULT
Appellant complains that the trial court erred in dismissing its third party demand against Mestayer. The court found as a matter of fact that the architect would design the facility, but would not supervise its construction. We find no clear error in this conclusion.
Mestayer provided the standard contract between Weill, Inc. and Skater's. No written contract was executed between Mestayer and Skater's (the architect's duties were provided for in the standard contract). The testimony of Messrs. Mestayer and Escurieux established that a fee of 5% of the contract price would be charged for the design of the project. A higher fee of 6% *171 or 7% would have been charged had the architect contracted to supervise the work of the general contractor. This increase in percentage rates amounts to an increase of the fee charged by $3,600.00 or $7,200.00, respectively. Mestayer agreed to periodically inspect the progress of the work only for the purpose of assigning a percentage of completion to the project in order to approve the draw to Weill, Inc. No evidence was offered by Skater's to rebut this understanding of the agreement.
Appellant sought to imply an obligation to supervise the work based on a misconstrual or incomplete reading of a provision contained in the specifications for Skater's Playground. Article 2.2.4 reads in full:
"2.2.4 Revise as follows: The Architect will make periodic visits to the site to familiarize himself generally with the progress and quality of the work to determine in general if the work is proceeding in accordance with the Contract Documents. On the basis of his on-site observations as an Architect, he will keep the Owner informed of the progress of the work, and will endeavor to guard the Owner against defects and deficiencies in the work of the Contractor. The Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the work. The Architect will not be responsible for the construction site, means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the work, and he will not be responsible for the Contractor's failure to carry out the work in accordance with the Contract Documents. The undertaking of periodic visits and observations by the Architect or his associates shall not be construed as superintendence of actual construction. Neither the provisions of this paragraph nor their failure specifically to exclude other liability shall extend in any way the liability of the Architect to any person whomsoever."
The limited duty of the architect under this article is clear and is supported by the testimony. Skater's could have arranged for the architect to actively supervise construction, but did not. This would have required the payment of a higher fee to Mestayer, an apparently unattractive, and certainly unelected, option to Skater's.

ARCHITECT'S DESIGN FAULT
The lower court left unaddressed the issue of alleged faulty design by the architect. The claim is therefore treated as denied. This claim is based on the alleged negligence of the architect in failing to determine the drainage characteristics of the site in failing to perceive that the location of the building would impede the natural flow of water, and in failing to provide a facility on the north side of the building to prevent water from accumulating against the northern foundation.
Architects are held liable for damages incurred by the owner by whom they are employed when their plans and specifications are faulty and defective as a result of their neglect in exercising care and skill. In the absence of an express contractual provision to the contrary, an architect's obligation does not guarantee a perfect plan or a satisfactory result. There is no assurance that miscalculations will not occur. Liability is considered to rest only on unskillfulness or negligence and not upon mere error of judgment. The ordinary care and reasonable skill by virtue of which architects' preparations of plans and specifications are to be evaluated in determining whether they are guilty of negligence, must be the same care and skill required by others engaged in the same profession in the same locality. Maloney v. Oak Builders, Inc., 224 So.2d 161, 168 (La.App. 4th Cir.1969), modified, 256 La. 85, 235 So.2d 386 (1970). It was Skater's burden to show that Mestayer failed to perform its services with the same degree of skill and care exercised by others in the same profession in the same general area. See also Hogan Exploration, Inc. v. Monroe Engineering Associates, Inc., 430 So.2d 696 (La.App. 2d Cir.1983); Pittman Construction Co. v. City of New Orleans, 178 So.2d *172 312 (La.App. 4th Cir.), writ denied, 248 La. 434, 179 So.2d 274 (1965).
Much testimony was adduced concerning the design of the drainage system used for the skating facility. It was established at trial, and accepted by the trial court, that Mr. Escurieux, one of the partners of the Mestayer firm, inspected the site while the plans were only at the preliminary design stage. Mr. Escurieux explained that the elevation of the foundation was set by placing a nail in a tree eight feet away from the dirt work at the approximate height of an adjacent carport. The carport, so says its owner as related by Mr. Escurieux, had never flooded. Mr. Escurieux stated that he notified Weill Inc's project construction manager, Mr. Ricord, of the appropriate height of the foundation.
The contractor, through Mr. Leopold Weill, Jr., testified that he was told by Mr. Escurieux that all of the site work had been completed by the prior contractor (Mr. Ardoin). As noted earlier, no elevation of the foundation was specified in the plans. Weill, Inc. did not contemplate site work beyond grading the foundation site and back filling the parking lot. In order to elevate the foundation to the height allegedly called for by Mr. Escurieux, approximately 900 yards of additional dirt fill would have been required. This would have cost in excess of seven thousand ($7,000.00) dollars for which no change order was executed.
Elevating the foundation above foreseeable water levels is a sound and acceptable means of avoiding drainage problems.[1] Several engineers and architects established that this system of choosing an elevation is reasonable and a common practice in Lafayette. A higher foundation (twelve to fourteen inches) would have prevented water from reaching the cold joint, thus effectively removing the facility from the risk of flooding. The chosen method of drainage comported to the engineering standards set in the Lafayette community.
The trial court accepted the testimony of Mr. Escurieux and found that the architect's drainage design was not faulty or defective. Further, Skater's failed to prove that Weill, Inc. contracted with the owner to elevate the foundation above the original grade. These conclusions of the trial court are supported by the record. Finding no manifest error, the judgment will not be disturbed on appeal.

MITIGATION AND CALCULATION OF DAMAGES
Appellant urges that the trial court misapplied La.C.C. art. 2002 in holding that Skater's failed to take action to correct the drainage problem, and thereby failed to mitigate its damages. Our jurisdiction has long required that "[a]n obligee must make reasonable efforts to mitigate the damage caused by the obligor's failure to perform. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced." La.C.C. art. 2002.
Appellant argues that the true nature of the construction defects were not known to Skater's, to Weill, Inc., or to Mestayer until litigation ensued. Appellant suggests that the trial court's holding requires the owner (a layman) to have been more aware of the insufficiencies of the building and drainage conditions than were either the architect or the contractor. Appellant further asserts that Skater's did make reasonable efforts to correct the condition of the construction and had repair bills offered into evidence to prove it. The bills include repair for damage as a result of the bathroom incident.
What constitutes reasonable care depends upon the circumstances of the particular case, considering time, knowledge, opportunity, and expense. See Unverzagt v. Young Builders, Inc., 252 La. 1091, 215 So.2d 823, 825 (1968). The record reveals that seepage of water into the foundation of the facility could have been eliminated or at least alleviated by making reasonable *173 efforts. Upon recognition of the drainage problem, Mr. Mestayer recommended to Diane Tanner (the manager of Skater's) that to avoid the water buildup, the culverts on the other side of the building would have to be maintained (i.e. remove debris and unclog the grate). Mr. Mestayer also recommended that the property on the north side of the building could be contoured in such a way as to have the water channeled through swales to the existing culverts. The most expensive alternative presented was to install additional drains on the north side of the construction. Mr. Mestayer stated that this probably would not be necessary if the culvert was maintained and if the grade of the property allowed the water to run off faster. These suggestions were made well before the May, 1980 rains which brought on the first seepage. We note that Skater's held over $35,000.00 of Weill, Inc.'s money to institute any or all of the alternatives.
Appellant suggests that since the exact nature of the defect in the building was not known until litigation commenced, Skater's was not in a position to mitigate its damages. Assuming that the defect was not discovered any sooner, appellant's argument remains unconvincing. The precipitating factor of the damage was unequivocally the standing water, a situation which could have been eradicated using reasonable, if not minimal, effort. We find that the damage caused by seepage of water through the cold joint created by the non-monolithic concrete pour could have been minimized, if not prevented, by reasonable effort on the part of Skater's. The trial court correctly evaluated the evidence and properly found that Skater's had failed to mitigate its damages.
Appellant suggests that no rational relationship exists between the amount of damages awarded by the trail court and the evidence of damage presented at trial. As noted earlier, the trial court awarded Skater's $40,000.00 while appellant's demand exceeded $308,000.00. This amount represents the sum of four categories of damages: 1) previous expenses for repairs; 2) future costs of repairs; 3) lost income from competitive, artistic, and speed skating clubs and proshop sales; and 4) lost income from declining demand for general admission and special function. These damages, appellant asserts, directly resulted from Weill, Inc. and Mestayer's failure to properly design and construct the skating rink.
The trier of fact is vested with much discretion in assessing damages. Before an appellate court can disturb an award made by a trial court, the record must clearly reveal that the trier abused its discretion in making its award. La.C.C. art. 1999; Borden, Inc. v. Howard Trucking Co., Inc., 454 So.2d 1081, 1092 (La.1984). The record supports the trial court's findings. It was well within the purview of the trial court to find that the hardwood skating floor was damaged primarily by the "bathroom incident" (where toilet water remained and saturated the floor for several hours). The resultant buckling required extensive repair of the floor and decreased the quality of the surface. This flood was not and cannot be attributed to Weill, Inc. or Mestayer. The damage caused by seepage of water through the cold joint was in fact minimal when contrasted with the damage caused by the bathroom incident.
The trial court was also correct in reducing the award to Skater's by an amount which could have been used to prevent any damage caused by the construction defect. The record shows that cleaning the culverts and contouring the property would have cost well under $5,000.00. Skater's failed to prove damages beyond this amount.

THIRD PARTY DEMANDS OF MESTAYER AND WEILL, INC.
Mestayer appeals the judgment of the trial court granting a directed verdict in favor of American Motorists Insurance Company, the insurer of Frank Beaullieu & Associates. In return, American moves that this court affirm the trial court judgment in toto and moves for damages for a frivolous appeal under La.C.C.P. art. 2164. We find no error in the trial court's action *174 granting American a directed verdict. We refrain, however, from granting American's motion for damages for a frivolous appeal.
Weill, Inc.'s third party demand against Mestayer for indemnity was dismissed by the trial court. We detect no basis for the application of contractual indemnity and find no error in the action of the trial court.

CONCLUSION
For the above and foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are taxed to Skater's.
AFFIRMED.
NOTES
[*] Judge H. Garland Pavy of the Twenty-Seventh Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] Bob Barras, an architect, further testified that an underground drainage system or a waterproofing of the foundation would also protect the foundation.