449 So.2d 666 (1984)
Helen Anthony, wife of/and Benjamin ANTHONY
v.
NEW ORLEANS PUBLIC SERVICE, INC.
No. CA-1350.
Court of Appeal of Louisiana, Fourth Circuit.
April 6, 1984.
Writ Denied June 1, 1984.
*667 Timothy G. Schafer, Schafer & Schafer, New Orleans, for John P. Hutchings and United Services Auto. Asso.
Charlton B. Ogden, II., Ogden, Ogden & McCune, New Orleans, for New Orleans Public Service, Inc.
Joseph M. Bruno, Bruno & Bruno, New Orleans, for Helen Anthony.
Before LOBRANO, CIACCIO and WARD, JJ.
LOBRANO, Judge.
This appeal arises out of an accident which occurred on February 25, 1980 in the neutral ground lanes of Canal Street when a New Orleans Public Service, Inc. (NOPSI) bus traveling in a lake bound direction made an abrupt stop and/or deceleration in order to avoid impact with a left turning green Porsche automobile driven by John Hutchings. The plaintiff, Helen Anthony, was a passenger on the NOPSI bus.
Anthony initially sued NOPSI for the injuries allegedly sustained, but later amended her suit to include Hutchings and his insurer, United Services Automobile Association (USAA) as defendants. NOPSI, Hutchings and USAA third partied each other seeking full indemnity and/or contribution. The lower court rendered judgment in favor of Anthony and against both defendants, in solido, in the sums of $25,000.00 for general damages, $19,463.86 in medicals, $22,083.00 for past lost wages and $30,000.00 for future lost wages and/or diminished earning capacity. Anthony appeals seeking an increase in the award, while both NOPSI and Hutchings seek reversal as to liability. Hutchings also seeks a proper judgment on the third party demand.
The issues of this case are basically factual, and we begin a discussion of same referring to the trial court's reasons for judgment. We quote his findings as follows:
"The NOPSI buses enter and exit the neutral ground on Canal Street on the lake side of Claiborne Ave. which is also approximately in front of the Saxony and the Delta Towers. Crossing the neutral ground is an auxilliary turn lane so that vehicles travelling from the lake towards the river may make a U turn on the other side of the interstate overpass.
There was no contact made between the bus and the car. However, according to the bus operator, Mrs. Bagneris, she hit the brakes to stop the bus in order to avoid hitting the green Porsche that had entered the auxilliary turning lane and had crossed into her path of travel. She testified that her vision was blocked by two buses that were traveling in the opposite direction and were stopped between Claiborne Ave. and the auxilliary turning lane and as she cleared the rear of the last bus she entered the auxilliary turning lane and travelled to the middle when the green Porsche pulled in front of her and at which time she hit the *668 brakes on the bus. She testified that she did not see the green Porsche until it was directly in front of her. The passenger on the bus, Mrs. Pearl Ferguson, testified that she was standing at the front of the bus and did not see the green car turn but when the brakes were applied she did turn and see the green car in front of the bus and had the bus not stopped, the bus would have hit the car. However, she could not testify as to any other facts leading to that point in time. The driver of the green Porsche, John Hutchings, testified that he turned into the auxilliary lane and stopped completely within the river bound lane for the NOPSI buses and behind the two buses that were stopped for the traffic control signal at the intersection of Claiborne and Canal Streets. He testified that when the bus travelling in a lake direction and being driven by Mrs. Bagneris appeared within his vision it stopped suddenly and he could offer no explanation. He then backed his car out of the auxilliary turning lane and proceeded on Canal Street across Claiborne and made a U turn and came back on Canal Street in a lake direction to Conti Toyota where he was to meet his wife.
Another NOPSI driver was a passenger on the bus being operated by Mrs. Bagneris at the time of the accident and this is Mr. Robert Buckley, who testified that the green Porsche came to a stop in the auxilliary turn lane and protruded into the lake bound lane in the neutral ground by only three to six inches. He testified that he had been standing up in the bus and saw the green Porsche for the first time as the bus in which he was traveling crossed Claiborne Ave. travelling towards the lake. Originally under cross-examination Mr. Buckley testified that the green Porsche did not stop in front of the bus. Furthermore, under cross-examination the tenor of his testimony was that the bus made a sudden stop for no reason at all whereas in response to several questions by the Court he testified that had the bus not stopped it would have hit the green Porsche. He also testified that the green Porsche when it stopped, did so only for a brief second and then quickly reversed and backed out of the auxilliary turning lane so that by the time the bus travelled to the point where the front of the car had stopped the car was no longer there and impact was avoided."
Although the extent of Mrs. Anthony's injuries are in dispute all parties agree that as a result of the sudden stop, she was thrown off of her seat onto the aisle. Faced with obvious conflicting testimony the learned trial judge applied the rule of this Circuit as enunciated in Payne v. NOPSI, 374 So.2d 189 (La.App. 4th Cir.1979), wherein we stated,
"However, the trial court need not accept all of the testimony of any witness as being true or false. He can, and in many instances must, believe and accept part or parts of a witness' testimony and disbelieve and refuse to accept any part or parts thereof. Basically, this is a matter of credibility, a matter which is particularly within the discretion of the trial court." id. at 191.

In cases such as the one at bar, where an innocent third party is injured in an automobile accident, involving two or more vehicles, there is a presumption of negligence on the part of all drivers and each has the burden of exculpating himself of the negligence. Johnson v. Manis, 437 So.2d 359 (La.App. 4th Cir.1983); Poche v. Frazier, 232 So.2d 851 (La.App. 4th Cir. 1970).
As indicated earlier, the trial judge noted that the testimony of Hutchings and of the NOPSI employees were conflicting and irreconcilable. Applying the Poche, supra, burden of proof, the trial judge thus concluded both defendants had failed to exculpate themselves from negligence and that their joint and concurrent negligence caused plaintiff's injuries. A review of the record convinces this court that the trial judge was correct in his ruling.
NOPSI, as a common carrier, is charged with the duty of exercising the *669 highest degree of care to their passengers. Greenwald v. NOPSI, 414 So.2d 870 (La. App. 4th Cir.1982). The operator of a city transit service owes a duty to its bus passengers separate and distinct from the duty owed by a negligent left turning motorist. Thus the mere showing of injury to a fare paying passenger on a public conveyance imposes upon the carrier the burden of exculpating itself from negligence. Pilipovich v. NOPSI, 422 So.2d 262 (La. App. 4th Cir.1982). The evidence substantiates the factual conclusion that had the NOPSI operator been keeping a proper lookout she would have seen the left turning Hutchings' vehicle in time to avoid the abrupt stop or deceleration. Clearly the testimony of passenger Buckley is credible on this point. However, the evidence also substantiates the fact that Hutchings attempted to make a left turn across the path of oncoming traffic without first making sure that he could do so safely. Three witnesses, Mrs. Bagneris, and passengers Buckley and Ferguson, all testified that the Porsche stopped in front of the bus, and if the bus had not jammed the brakes it would have collided with the vehicle.
Anthony also specified as error, the failure of the trial judge to allow her case to be tried before a jury. This argument lacks merit.
Originally Hutchings and USAA had requested a jury trial. However, on May 17, 1982 they filed a motion to waive a trial by jury which was signed on May 20, 1982. This pleading contained a certificate indicating that copies of same were sent to all counsel of record. In November of 1982 counsel for Anthony filed a motion for a trial by jury indicating that defendant's motion to withdraw his request for a jury trial had never signed. Relying on this representation, the trial judge signed that motion granting Anthony a jury trial. That order was rescinded however, in view of the fact that Code of Civil Procedure Article 1733(C) provides for a ten day period within which to file a request for jury trial once the court grants an order to withdraw a previously requested demand for jury trial. The rescinding of Anthony's motion for jury trial was correct since the request for same was untimely under Article 1733(C) cited above.
Anthony appeals the trial court's award of $25,000.00 in general damages and $30,000.00 for future loss of wages and diminished earning capacity as being inadequate.
The record reveals that at the time of her accident Anthony was a 37 year old food service worker at Charity Hospital earning $4.82 per hour. All of the physicians who testified agreed that Mrs. Anthony had a preexisting degenerative disc disease at the C5-6 level. Although she denied that she had any prior problems with her neck, there was evidence of some prior complaints. Furthermore, Dr. Charles Billings acknowledged that he performed surgery on Anthony's neck because of a positive discogram, and because of Anthony's continued complaints. Such testimony is particularly significant in this case since Mrs. Anthony had a preexisting degenerative disc at the C5-6 level; underwent a Cat scan which was inconclusive; underwent an electromylographic study which produced no abnormal findings; underwent two mylograms which revealed no abnormality except for the narrowing at the C5-6 level. The evidence is also clear that the degenerative disc disease did not progress during the year following the accident.
The trial judge, in light of these factors had to consider the necessity for the surgery, to which there was disagreement among the medical experts; the reliability of the tests on which the surgery was based; and the validity of the plaintiff's complaints. Before a Court of Appeal can disturb a damage award made by a trial court the record must clearly reveal that the trier of fact absued his discretion in making his award. Britsch v. NOPSI, 422 So.2d 255 (La.App. 4th Cir.1982). We find no such abuse in this case and thus do not find it necessary to consider the prior awards for similar injuries cited in plaintiff's brief. Sanders v. NOPSI, 422 So.2d 232 (La.App. 4th Cir.1982).
*670 Appellant, Hutchings, argues that in an award for future loss of wages or diminished earnings capacity interest should run not from the date of judicial demand but rather from the date of judgment. As noted in their brief this court recently considered the issue of whether interest on awards of future loss of income should run from date of judicial demand or from the date of judgment. Schackai v. Tenneco Oil Co., 436 So.2d 729 (La.App. 4th Cir.1983). In that case, we clearly held and reaffirm today our holding that in suits for damages "ex delicto", the court shall award interest from the date of judicial demand.
Since the trial court failed to render judgment on the demands filed by both defendants for contribution, defendant USAA urges us to do so, citing Schackai supra, as authority. The trial court found both defendants to be negligent and held them liable jointly, severally and in solido. We therefore grant judgment in favor of NOPSI, and Hutchings and USAA on their third party demands against each other ordering contribution from each for one-half of the total judgment.
AMENDED AND AS AMENDED AFFIRMED.