619 So.2d 894 (1993)
Erna Mae GRAHAM, Plaintiff-Appellant,
v.
SOUTHERN PACIFIC TRANSPORTATION COMPANY, et al., Defendants-Appellees.
No. 92-710.
Court of Appeal of Louisiana, Third Circuit.
June 2, 1993.
*895 Sue Fontenot, Abbeville, Gregory Karl Klein, Lafayette, for plaintiff-appellant Erna Mae Graham.
James J. Davidson, III, John Edmund McElligott, Jr., Kyle Liney Mark Gideon, Lafayette, for defendants-appellees So. Pacific Transp. Co., et al.
James T. Guglielmo, Opelousas, for defendant-appellee Town of Scott and Global Ins.
Harvey Lee Hall, Baton Rouge, for defendant-appellee State of La.
Sidney Hayward Cates, IV, Marsha M. McKendall, New Orleans, for defendant-appellee DOTD.
Before STOKER and DECUIR, JJ., and CULPEPPER, J. Pro Tem.[*]
STOKER, Judge.
This is an appeal by plaintiff, Erna Mae Graham, from a judgment sustaining an exception of prescription in favor of the Town of Scott, its liability insurer, Great Global Assurance Co., and the State, DOTD. We affirm.
Fault on the part of Southern Pacific Transportation Company and its engineer, Tommy Lee Williams, is a major issue in this case because it bears on the question of interruption of prescription against the appellees, the town of Scott (Scott), Great Global Assurance Co. (Great Global) and State, DOTD. However, liability on the part of Southern Pacific and Williams is not at issue because their liability went out of the case by settlement and dismissal as we shall explain more fully.

FACTS
This case involves a wrongful death action filed by plaintiff for damages for the death of her husband, George Weldon Graham. Graham was killed when the automobile he was driving across railroad tracks at the Alfred Street crossing in Scott, Louisiana was struck by a train owned by Southern Pacific Transportation Company. The accident occurred on September 23, 1985 at about 7:10 p.m., just before dark. The weather was clear.
The train was being operated by engineer Tommy Lee Williams, who was in the short nose, or the "front", of the engine. At the time, the train was being operated with the engine's long nose forward, or *896 "backwards". In other words, the train engine was in a reversed position, but it was still pulling (rather than pushing) the box cars behind it. James L. Boudreaux, the brakeman, was seated in the long nose of the engine, facing the crossing. The train's bells and whistles were blowing, and the lights at both the short nose and long nose ends of the train engine were on prior to and at the time of the accident. The train was travelling eastward at about forty m.p.h.
Graham, who was driving about ten m.p.h., failed to yield to the train at the crossing, despite the crossbuck sign. The sole neutral eyewitness to the accident, Brenda Schexnayder, testified that Graham just slowly drove onto the railroad tracks, neither speeding up nor slowing down to avoid the train. Graham had an unlimited view down the tracks to the west once he was within about fifty feet of the crossing. However, his car windows were rolled up and his air conditioner was on. Just prior to the accident, Graham had had four or five drinks with friends at a local bar.

PROCEDURAL HISTORY
The accident occurred on September 23, 1985. Plaintiff filed this wrongful death suit against Southern Pacific and Tommy Lee Williams on April 10, 1986. Southern Pacific and Williams answered with a general denial and alleged the defense of negligence on the part of Graham.
On October 5, 1987, Southern Pacific filed third party demands against the Town of Scott, its liability insurer, and the State, DOTD, alleging fault through improper signing of the crossing and failure to upgrade the crossing. The Town of Scott and the State, DOTD answered with general denials.
On April 10, 1989, Scott filed a motion for summary judgment as to Southern Pacific's third party demand, arguing that it had no duty to upgrade the railroad crossing. On April 26, 1989, the State, DOTD also filed a motion for summary judgment to dismiss Southern Pacific's third party demand.
On May 23, 1989, plaintiff filed a supplemental and amending petition to add the Town of Scott and the State, DOTD as party defendants, alleging negligent signing of the crossing and failure to upgrade the crossing. She subsequently added Great Global as a defendant, also. The Town of Scott and the State, DOTD answered with general denials and asserted the defenses of contributory negligence and immunity. Scott, Great Global and the State, DOTD filed motions for summary judgments seeking dismissal of plaintiff's claims.
The trial judge denied the motions for summary judgment filed by Scott, Great Global and the State, DOTD, both on the main demand and the third party demand. This court then denied the applications for writs filed by the defendants.
On December 18, 1990, the trial judge granted Southern Pacific's motion for a partial summary judgment holding that Southern Pacific was not liable for any failure to have additional crossing warning devices installed at the Alfred Street crossing. Plaintiff filed a motion for new trial which was denied on January 24, 1991. Plaintiff did not appeal that judgment.
On February 1, 1991, the Town of Scott, its insurer, and the State, DOTD filed exceptions of prescription, which were referred to the merits.
On February 4, 1991, the trial judge signed a judgment dismissing plaintiff's claims against Southern Pacific and Williams, pursuant to a settlement agreement. At the same time, the trial judge dismissed Southern Pacific's third party demands against the Town of Scott, its insurer and the State, DOTD. Thus, Southern Pacific went out of the case as a party.
Prior to trial, plaintiff and Southern Pacific attempted to enter a stipulation that Southern Pacific was 1% at fault for the accident. The trial judge sustained the remaining defendants' objections to the stipulation.
The case against Scott, Great Global and State, DOTD proceeded to trial on the merits before a jury. However, the jury was never called upon to consider the negligence *897 of Scott and DOTD. At the close of the defendants' case, defendants moved for a directed verdict based on the failure of plaintiff to establish negligence on the part of Southern Pacific and its engineer; and this being so, defendants urged Southern Pacific and its engineer were not solidary obligors and suit against them did not interrupt prescription against Scott, Great Global and DOTD. The trial judge granted the motion for a directed verdict and sustained the exceptions of prescription which these defendants had filed and which had been referred to the merits.
Plaintiff appeals the directed verdict and the judgment sustaining the exceptions of prescription. We affirm.

OPINION
The central issue in this appeal is whether the trial judge erred in holding that Southern Pacific was not at fault for causing the accident and that plaintiff's claims against the Town of Scott, Great Global and the State, DOTD had prescribed.
The pertinent procedural history of this case can be summarized as follows:
9/23/1985 Accident occurred
4/10/1986 Plaintiff filed suit against Southern Pacific and Williams
10/5/1987 Southern Pacific and Williams filed a third party demand for contribution or indemnity against the Town of Scott, Great Global, and the State, DOTD
5/23/1989 Plaintiff filed supplemental and amending petition to add Town of Scott, Great Global, and State, DOTD as party defendants.

PRESCRIPTION
Plaintiff's supplemental and amending petition adding Scott, Great Global and State, DOTD as defendants could not relate back to her original petition since Scott, Great Global and the State, DOTD were brought in as third party defendants and as party defendants after the one year prescriptive period on the main demand had tolled. LSA-C.C. art. 1153, art. 3492; Randall v. Feducia, 507 So.2d 1237 (La. 1987). See also, Spott v. Otis Elevator Co., 601 So.2d 1355 at 1359, n. 10 (La.1992).
However, under LSA-C.C. art. 3503, interruption of prescription as to one solidary obligor interrupts prescription as to all other solidary obligors. Therefore, plaintiff's claims against Scott, Great Global and State, DOTD did not prescribe if Southern Pacific was at fault for the accident, and, thus, a solidary obligor. The trial judge's directed verdict in favor of Southern Pacific, holding it not at fault and thus not solidarily liable for the accident, implicitly tolled prescription on plaintiff's claims against the other defendants. Therefore, plaintiff appeals the trial judge's directed verdict in favor of Southern Pacific.

DIRECTED VERDICT
A motion for a directed verdict is appropriately granted in a jury trial when, after considering all evidentiary inferences in the light most favorable to the movant's opponent, it is clear that the facts and inferences are so overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict. Barnes v. Thames, 578 So.2d 1155 (La.App. 1st Cir.), writ denied, 577 So.2d 1009 (La. 1991).
The standard of review for directed verdicts is whether, after viewing the evidence submitted, the appellate court can conclude that reasonable persons could not reach a contrary verdict. Bergeron v. Blake Drilling & Workover Co., Inc., 599 So.2d 827 (La.App. 1st Cir.), writ denied, 605 So.2d 1117, 1119 (La.1992). Also, Tilley v. Mount Vernon Ins. Co., 411 So.2d 72 (La.App. 3d Cir.1982).

ALLEGED NEGLIGENCE OF SOUTHERN PACIFIC
In the case before us, plaintiff alleges Southern Pacific was negligent in the following respects:
1) failing to install active signalization at the crossing;
2) conducting the train with the engine facing long nose first;
3) traveling at an excessive speed;

*898 4) failing to throw the train into emergency; and
5) failing to sound an emergency blast on the whistles.

1.
Plaintiff first argues that the trial judge erred in failing to find that the Albert Street railroad crossing was unreasonably dangerous due to the inadequate sight distance and therefore, that Southern Pacific was negligent in failing to install active signalization at the unreasonably dangerous crossing.
This is the same issue which was before the trial court posed by Southern Pacific's motion for partial summary judgment which the trial court granted on December 18, 1990. In oral reasons for judgment in response to the motion for directed verdict brought by Scott, Great Global and State, DOTD, the trial court again ruled on the issue. Its conclusion was the same Southern Pacific was not at fault or negligent in failing to install active installations at the crossing. The trial court specifically held that the Albert Street crossing was not a dangerous crossing. Plaintiff filed a motion for a new trial on the issue, which the trial judge denied with reasons on January 24, 1991. Plaintiff filed her motion for this appeal on January 10, 1992. Plaintiff failed to timely appeal the partial final judgment. See LSA-C.C.P. art. 966, art. 1915, and art. 2087. Therefore, that judgment is final and is not properly before us on appeal.

2.
Second, plaintiff argues that Southern Pacific was negligent in conducting the train with the engine travelling long nose forward. The evidence overwhelmingly showed that it is a standard railroad procedure. The engine is designed to travel in either direction. All of the expert testimony indicated no negligence by Southern Pacific in this respect. Reasonable persons could not have found otherwise.

3.
Next, plaintiff argues that Southern Pacific was negligent in conducting the train at an excessive speed. The parties agree that the train was travelling at forty m.p.h. at the time of the accident. The evidence showed that the legal speed limit for the train was sixty m.p.h. Southern Pacific had a self-imposed speed restriction of forty-five m.p.h.
There is a duty upon Southern Pacific not to run its trains at a speed which will endanger the lives of those who make use of the streets of the city. What is excessive speed must be determined by a consideration of the hazardous conditions existing at the crossing where the accident occurred. The railroad's own speed regulation is evidence of the maximum safe speed in the area. Thomas v. Missouri Pacific R.R. Co., 466 So.2d 1280 at 1286 (La.1985), and cases cited therein.
The causal connection between the excessive speed of a train and an accident is normally not that the train, if operated at the required slower speed, could have stopped in time to avoid the accident. The causal connection is that the motorist might well have had more time to hear and observe the train and stop his vehicle in time to avoid a railroad crossing, but for the train's excessive speed. Thomas, supra at 1285 and cases cited therein.
All of the expert testimony presented showed that the train's speed was not unreasonable or excessive. It was well within the legal speed limit and less than Southern Pacific's own self-imposed speed limit. Reasonable person could not have concluded that the train was travelling at an excessive speed. See Succession of Theriot v. Southern Pacific Transp. Co., 560 So.2d 861 (La.App. 3d Cir.), writ denied, 565 So.2d 451, 453, 454 (La.1990).

4.
Plaintiff next argues that Southern Pacific was negligent in failing to throw the train into emergency, i.e. to put on the emergency brake when the crew saw that Graham was not going to yield to the train. The evidence was clear that by the time the *899 crew realized that Graham, who was travelling at only about ten m.p.h. and had a clear, unobstructed view of the train, was not going to stop, the train was upon him and could not possibly have been stopped with the emergency brakes in time to avoid the accident. Even when using the emergency brakes, the train requires about one-half mile to stop. Reasonable persons could not have concluded that the train crew was negligent in failing to apply the emergency brake when they first saw Graham's vehicle slowly approaching the railroad tracks.

5.
Finally, plaintiff contends that Southern Pacific was negligent in failing to sound emergency blasts on its whistle. The train crew was sounding the whistle continuously in the normal mannertwo long blasts, a short blast and then another long blastfrom a quarter of a mile before the Albert Street crossing. The train's bell was also ringing. An emergency blast consists of several short blasts.
The law requires the whistle to be sounded from three hundred yards before a crossing. LSA-R.S. 32:168. The law does not require emergency blasts. The train crew complied with the requirements of the law. Southern Pacific's internal regulations provide for emergency blasts when a person or an animal is actually on the tracks. In the case before us, sounding the emergency blast when Graham was on the tracks would have been pointless, since the train was bearing down on him by then. Apparently, Graham simply did not hear the whistles and bell prior to reaching the tracks. Reasonable persons could not have concluded that the train crew was negligent in failing to sound an emergency blast or that the failure to do so was a cause in fact of the accident.

STIPULATION
Finally, plaintiff has argued that the trial judge clearly erred in holding that Southern Pacific was not at fault for the accident since Southern Pacific stipulated to 1% fault.
Generally, a stipulation has the effect of a judicial admission which binds the parties and the court when not in derogation of law. To the extent the agreement affects only the rights of the litigants it must be applied as the law of the case. However, agreements between parties cannot affect the powers, duties and prerogatives of the court in relation to other litigants, the general public and the state. Mobley v. Harrel, 571 So.2d 662 (La.App. 2d Cir.1990), and cases cited therein.
In the case before us, the stipulation between plaintiff and Southern Pacific purported to affect the rights of the other litigants in the case and the trial court's determination of the applicable law and apportionment of fault in relation to the other litigants. Therefore, the stipulation was not binding and the trial judge did not err in disregarding it.

CONCLUSION
The trial judge did not err in granting a directed verdict holding Southern Pacific free from fault for the accident and in sustaining the defendants' exceptions of prescription.

DISPOSITION
For the reasons given, we affirm the judgment of the trial court. Costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.
NOTES
[*] Honorable William A. Culpepper participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.